John D. Bennett, S.
In this proceeding a hearing was held to determine the status of one of the respondents who seeks the right to conduct an examination under section 141 of the Surrogate’s Court Act and to interpose objections.
The respondent and her mother appeared before the court and the attorneys for both sides stipulated to the testimony without conceding the truth thereof. The following facts however were stipulated: That the respondent was born on September 12, 1929; that the witness was her mother; that a marriage ceremony between her mother and the decedent took place on October 29, 1929 at Syosset, New York; that said marriage was a lawful marriage; that it was not dissolved by annulment proceedings but was dissolved on May 21, 1930 by decree of a Nevada court rendered on default in proceedings brought by the decedent against the mother; that the mother did not appear therein in person, by attorney or through a power of attorney. The said decree was marked in evidence with a copy of the complaint verified by the decedent but the truth of the allegations therein were not admitted by the respondent here.
The uncontradicted testimony of the mother in this proceeding establishes that the decedent was the father of the respondent unless the contention of the petitioner is correct to the effect that section 83-a of the Decedent Estate Law prohibits such a finding by this court. The birth and baptismal certificates were received in evidence and, while not alone sufficient evidence as proof of paternity, they do corroborate the testimony of the mother.
The petitioner relies upon the complaint in the Nevada action as evidence that the decedent was not the father of the respondent for the reason that it alleges that there were no children issue of the marriage. The petitioner also asserts that there is no proof before the court that the decedent had ever known or even seen the respondent’s mother.
Taking the latter contention first, this is contradicted by petitioner’s own exhibit as hereinafter mentioned. As to the implied denial that the decedent had any child at that time, the allegation of the complaint is not at all unequivocal for it is quite possible in view of the history of these people that the decedent in alleging that there was no issue “ of the marriage ” drew a mental distinction as to issue horn before the marriage.
The complaint in the Nevada action is of considerable interest. The petitioner relies thereon in arguing that the marriage was tainted by duress and should therefore not now be considered *837 to have been a valid marriage. The only evidence of duress that could be considered as such is in the body of the Nevada complaint which was verified as true by the decedent. It actually confirms the existence of the marriage and states that decedent’s wife refused to live or cohabit with him after the marriage, that prior to the marriage decedent had ‘ ‘ seen her ’ ’ around Christmas time in 1928. Decedent’s complaint alleges that in October, 1927, which was about two years prior to the birth of the respondent, he had been served with a warrant of arrest and “threatened with an indictment by the Judge” of the Domestic Delations Court “ if he (decedent) refused to marry the said defendant ’ ’; that he then entered into the marriage “ induced by the threat of prosecution. ”
This court will not accept as true the allegation that “ duress ” was perpetrated by a Domestic Delations Court Judge or that any such “threat” two years before the birth of the child could have forced the decedent to marry the mother a month after the birth!
The petitioner also argues that the record of the Family Court proceedings does not establish paternity. With this the court agrees, were that record to be considered by itself and not in connection with the other proofs. However, it shows that the decedent, with an attorney representing him, appeared before the Children’s Court of Nassau County in proceedings designed to compel him to support the child (respondent here). While that was a support proceeding and not one to determine paternity, the record shows that the decedent and his counsel raised no question denying paternity although it was therein alleged that he was the father of the child. Moreover, with advice of counsel he agreed to support the child, even after the Nevada divorce decree had been rendered.
The main argument of the proponent is that this court is powerless to make a finding of legitimacy by reason of section 83-a of the Decedent Estate Law; that the statutory procedure mentioned therein is the only means by which an illegitimate child can be legitimized. In this the court holds that the proponent is mistaken. Section 83-a was added by chapter 958 of the Laws of 1965 and became effective March 1, 1966. The purpose of such section was to permit an illegitimate child to inherit from and through his mother the same as a legitimate child, and to provide for inheritance from an adjudicated father under specified circumstances.
Nowhere did the Legislature indicate an intention to revoke, modify or to change the rule set forth in section 24 of the Domestic Delations Law which has been in effect since 1909. *838 Since that time for all purposes illegitimate children were considered to have become legitimized by the marriage of their parents. In 1961 an amendment was made to eliminate some doubt by inserting the phrase “the legitimate child of both parents. ”
The court is satisfied from the proofs herein, including the stipulations of counsel, that the following chronology of facts has been established: That the decedent knew and met with the respondent’s mother more than once during the period of two years before the birth of the respondent, that the mother had no connection with any other man other than the decedent prior to such birth, and decedent and respondent’s mother were lawfully intermarried within the meaning and intent of section 24 of the Domestic Relations Law; that respondent was accordingly legitimized and after such marriage became the legitimate child of both parents and entitled thereafter to all the rights and privileges of a legitimate child.
In this court’s view section 83-a of the Decedent Estate Law is limited in its application to cases where the parents of an illegitimate child had not married, and that in the absence of proof of such marriage the said new section permits inheritance by and from an illegitimate person only under the circumstances specifically set forth in section 83-a.
What the petitioner now asks this court to find is, in effect, that although the respondent was legitimized by virtue of section 24 of the Domestic Relations Law, in force when her parents were intermarried, she was bastardized by the recent enactment of section 83-a of the Decedent Estate Law. This is obviously unfounded and the court will not make such a ruling'. The purpose of section 83-a was not intended to cut down but rather to increase the rights of illegitimate children.
The respondent is accordingly declared to be a distributee of the decedent, entitled to examine the subscribing witnesses under section 141 of the Surrogate’s Court Act and to file objections if so advised.